**Sukjin Henry Cho, Esq.**
2160 North Central Road, Suite 305
Fort Lee, NJ 07024
(201) 886-0200
Attorney ID# 015281987
Attorney for Plaintiff

| | |
|---|---|
| **OTG New York, Inc.,** | **UNITED STATES DISTRICT COURT** |
| | **DISTRICT OF NEW JERSEY** |
| *Plaintiff*, | |
| | **Civil Action** |
| **v.** | **No. 24-cv-_____** |
| | |
| **OTTOGI America, Inc.,** | **COMPLAINT** |
| | |
| *Defendant*. | **JURY DEMAND** |

NOW COMES Plaintiff, OTG New York, Inc. ("OTG New York"), by its attorney, Sukjin Henry Cho, Esq., and for its Complaint against Defendant, OTTOGI AMERICA, INC. ("OTTOGI America"), alleges as follows:

<u>OVERVIEW</u>

1.      Plaintiff, OTG New York, Inc., owned by Mr. Choi, is a distributor of the defendant, selling ONLY defendant's products for the past Seventeen (17) years since 2008. Plaintiff developed defendant's distribution market from nothing to $15 Million dollars per year for the defendant.

2.      Defendant, OTTOGI America is 100% wholly owned and is a subsidiary of the Korea company, OTTOGI Corporation, which is a multi-billion-dollar company headquartered in Korea.  The defendant sell their products directly in the United States except for the sales through the plaintiff.

1

3.     OTTOGI AMERICA solicited OTG New York to serve as the North American East Coast distribution arm for OTTOGI AMERICA's products from the year 2008, which culminated in their understanding of a Distributor Agreement (the "Agreement") with an indefinite time in mind for their business relationship.

4.     This Agreement was essentially for an indefinite term based on mutual trust and understanding, as the relationship between Mr. Choi the principal of the Plaintiff and OTTOGI America, and its parent OTTOGI Corporation in Korea were very strong.

5.     OTG New York held up its end of the bargain—investing heavily in warehouse, equipment, inventory, advertising, and personnel to establish and grow OTTOGI AMERICA's brand in the Eastern United States—and the results were undeniably successful.

6.     Over the span of the Agreement which can be dated from 2008 to 2023, OTG New York has sold over $132 million in OTTOGI America's products, significantly boosting OTTOGI America's presence in the region.

7.     But OTG New York's market presence and sales power—precisely what OTTOGI AMERICA was looking for in a business partner—strained OTG New York's sales capabilities. Additionally, OTTOGI America's recent price increases have placed OTG New York in an extremely difficult position, severely straining their financial resources and operational capacity. The sudden escalation in prices forced OTG New York to increase their own prices, leading to a significant loss of customers and market share. This untenable situation has been further exacerbated by OTTOGI America's unjustified termination of the Agreement, compounding the financial harm and damage to OTG New York's business and its reputation.

8.     Although OTG New York and OTTOGI AMERICA's former leadership always

worked together to ensure a *timely*, steady supply of product to OTG New York's customer-base, OTTOGI AMERICA's current leadership is in disarray and has demonstrated a remarkable apathy towards reciprocating the commitments that OTG New York made to it.

9.      In early 2024, OTTOGI America issued a termination notice, falsely claiming OTG New York was in breach of the Agreement and informed OTG New York that the Agreement would cease on May 31, 2024.

10.      This termination notice lacked any legitimate basis and was a pretext to justify severing ties with OTG New York to avoid its contractual obligations, amounting to an unfair "Taking" of OTG New York's built-up market advantages and benefits without fair and just compensation.

11.      In addition, OTTOGI America now insist on the 60-day payment terms that arose recently in letters were never an issue until this year, reflecting the breach of mutual trust and understanding that characterized their business dealings.

12.      OTG New York has suffered significant financial harm and damage to its business reputation as a result of OTTOGI America's wrongful actions. These losses include not only direct financial damage but also extensive economic losses and irreparable damage to its business reputation and relationships with customers.

13.      OTTOGI America worked to deprive OTG New York of one of the benefits under the Agreement: *exclusivity*. OTTOGI AMERICA conceded as much when it offered OTG New York new contractual terms that would have permitted OTTOGI AMERICA to sell its products to any importer/distributor OTTOGI AMERICA saw fit.

14.      Although OTTOGI America could still have a distributor agreement which OTG

New York consented that didn't have exclusivity, they did not try to pursue an ongoing non-exclusive distributor relationship, but rather just a full-on termination.

15. Following the initiation of this litigation, OTTOGI America concerted to commandeer OTG New York's network of dealer-customers that it invested millions to create - to serve as the instrumentality through which OTTOGI America could import its product-line and sell directly to OTG New York's dealer-customers bypassing plaintiff.

16. Accordingly, this action seeks to: (a) remedy OTTOGI America's unlawful, bad faith termination of its Agreement with plaintiff, which violates myriad provisions of the New Jersey Franchise Practices Act (NJFPA); (b) hold OTTOGI America, liable for breach of contract; (c) hold OTTOGI America for tortiously interfering with many of OTG New York's relationships with its dealer-customers located across the eastern United States; (d) hold OTTOGI America responsible for the reasonable and foreseeability relied on the promises they have made to OTG New York; (e) remedy OTTOGI America's conspiracy to maliciously harm OTG New York's business and its reputation.

## PARTIES

17. Plaintiff, OTG New York, Inc. is a domestic corporation incorporated and operated under the laws of New Jersey, with its principal place of business located at 106 Stonehurst Ct., Northvale, NJ 07647.

18. Defendant, OTTOGI AMERICA, INC. is a corporation incorporated and operated under the laws of California, with its principal place of business located at 12840 Leyva St., Norwalk, CA 90650.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(2)

because complete diversity exists between the parties and the matter in controversy exceeds $75,000, exclusive of interests and costs.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and because a substantial part of the property that is the subject of this action is situated.

<u>**FACTUAL ALLEGATIONS**</u>

*OTG New York's Business Model*

21.    OTG New York was founded in 2008 to serve as a dedicated distributor for OTTOGI America's products in the Eastern United States. While the company is only selling and distributing OTTOGI America's products, the company took long time to established itself as a key player in the distribution of OTTOGI America's food products, leveraging its strategic location and robust infrastructure.

22.    Over the past 15 years, OTG New York has proudly partnered with OTTOGI America, significantly contributing to the market presence and sales of OTTOGI products in key Eastern U.S. cities such as New York, Philadelphia, Boston, and Washinton D.C. This longstanding relationship has been marked by substantial investments in marketing, advertising, and customer relationship management by OTG New York with yearly sales of over $15,000,000.00 in 2023.

23.    OTG New York has consistently dedicated substantial resources to the promotion and sale of OTTOGI products, achieving significant milestones, including the expansion of OTTOGI products' market presence and customer base spending over $2,314,266.77.

24.    The company has navigated challenges presented by an evolving market landscape, maintaining competitive pricing and managing increased operational costs and global

5

economic volatility. Despite the grueling work and initial financial hardships typical for new businesses, OTG New York managed to establish and grow a robust distribution network, often operating at a loss in the early years to build brand and customer loyalty.

25.    The dealer-customers purchase OTTOGI products in the different cities in the East coast then resell the products purchased from OTG New York to their final customers.

26.    Further, unlike most of its competitors in the industry, OTG New York maintains a large stock of inventory with 300 product lines – up to over $3 million worth - to ensure that it can promptly meet its dealer-customers' needs with minimal (if any) disruption to their respective businesses.

27.    Naturally, however, OTG New York's ability to serve as a leading North American distributor of products is rooted in the relationships it has with its suppliers, for without trusted, reliable partners, OTG New York cannot fulfill its mandate to its customers to provide the "highest quality support" in the industry.

### *OTG New York's Relationship with OTTOGI America*

28.    OTG New York has been the exclusive distributor for OTTOGI America's products on the East Coast since 2008, dedicating all its resources only to promote and sell OTTOGI products.

29.    OTTOGI AMERICA's contacts with this forum are substantial. Its management regularly traveled over the course of its relationship with OTG New York, including to: (a) negotiate agreements at OTG New York's headquarters and warehouse in New Jersey; (b) strategize with OTG New York on how to increase OTTOGI AMERICA's Eastern North American presence. Further, OTTOGI AMERICA directed shipment of millions of dollars in

inventory to OTG New York's warehouse in New Jersey.

30. Throughout the business partnership, OTG New York invested heavily in marketing, advertising, and customer relationship management, with its 20 employees, significantly contributing to the market presence and sales of OTTOGI America's products.

31. Despite OTG New York's substantial contributions, OTTOGI America failed to provide adequate support and timely delivery of products while also unfairly increasing the prices, severely hampering OTG New York's ability to meet customer demands and maintain its market position.

32. OTTOGI America's recent actions to increase prices abruptly have been particularly harmful, culminating in the abrupt and unjustified termination of the Agreement, which has resulted in significant business and economic losses for OTG New York.

33. Further, despite the challenges presented by an evolving market landscape, OTG New York has worked diligently to maintain a competitive edge, investing inventory, marketing, advertisement – including hiring people to promote the products inside grocery markets in person, and infrastructure to support the distribution of OTTOGI America's products.

34. OTG New York's financial commitment to OTTOGI AMERICA did not stop at carrying a healthy level of inventory. OTG New York invested *millions* over the term of the Agreement in warehousing, marketing, advertising, and promotional efforts to grow OTTOGI AMERICA's presence in the North American market—just as OTG New York promised to do.

35. As a result, OTG New York was forced to order more OTTOGI AMERICA inventory with long-term delivery dates to ensure OTG New York could meet the forecasted demand requirements of its customers.

*Termination of the Agreement*

36.   On February 28, 2024, OTTOGI America issued a notice of non-renewal and termination of the Agreement, citing alleged breaches by OTG New York, including failure to comply with payment terms and other baseless allegations.

37.   The Termination Notice did not afford OTG New York a right to cure these alleged breaches or even address why OTTOGI AMERICA's contentions were baseless.

38.   OTTOGI America's notice failed to provide OTG New York with the contractually required opportunity to cure the alleged breaches, in violation of the Agreement's terms and applicable laws.

39.   The termination notice was issued in bad faith and was a pretext for OTTOGI America's desire to sever ties with OTG New York and avoid its contractual obligations.

40.   In fact, OTTOGI America's is taking over the business of OTG New York without making just and fair compensation.

41.   As a result of OTTOGI America's wrongful termination of the Agreement, OTG New York has suffered and will continue to suffer significant economic, financial losses, including loss profits, and damage to its business reputation and relationships with customers.

42.   OTG New York's investment in inventory, marketing, advertising, and its warehouse infrastructure were rendered futile by OTTOGI America's abrupt and unjustified termination of the distribution Agreement.

43.   When the plaintiff placed orders with the defendant in June 2024, defendant refuse to sell and/or deliver products that were previously sold through the plaintiff.

*OTTOGI America's Actions on online Sales through Amazon*

8

44. OTG New York also expanded its sales channels, including selling through Amazon since 2015, and OTG New York demonstrated consistent growth in its Amazon sales from $250,000 in 2015-2016 (startup period) to over $1,300,000 in the year 2020.

45. However, OTG New York's sales began to decline when OTTOGI America entered the same marketplace in 2021, 2022, and 2023. OTTOGI America sold items at significantly lower prices to undermine OTG New York's sales.

46. For example, in March 2021, OTTOGI America listed products on Amazon at higher prices, which OTG New York was pressured to match the prices, then in April 2021, OTTOGI America abruptly dropped its prices, forcing OTG New York to follow suit, creating substantial financial strain.

47. By May 2021, further price reductions on major commodities by OTTOGI America led to an average operating loss of 40% for online sales for OTG New York. The Plaintiff was only selling a third party Namyang products for 10% of its sales.

48. To establish and maintain a strong presence on Amazon, OTG New York has invested heavily in various marketing and operational expenses not limited to:

a) Search engine optimization (SEO) and advertising to increase product visibility

b) Warehouse and logistics costs to ensure timely delivery

c) Customer service operations to handle inquiries and complaints

d) Regular promotional campaigns to boost sales and customer engagement

49. These investments have been significant. Despite these efforts and investments – which can be seen as totaling to over $3.5 million for online sales so far – OTTOGI America's actions have severely impacted OTG New York's Amazon sales performance.

50. The losses that OTG New York includes:

a) A decline in Amazon sales, with OTG New York's sales dropping significantly after

OTTOGI America entered the marketplace with lower-priced products.

b) Increased operational costs due to OTTOGI America's price manipulation on Amazon, which forced OTG New York to lower prices to stay competitive, resulting in an average operating loss of 40% for online sales.

c) Substantial investments in Amazon marketing, SEO, logistics, and customer service to maintain a competitive presence, which were sabotaged by OTTOGI America's undercutting tactics.

## COUNT I: VIOLATION OF LAW AND STATUTES

51.    OTG New York repeats and realleges the preceding paragraphs as if fully set forth herein.

52.    While the parties had an understanding of indefinite term of distribution agreement, OTG New York and OTTOGI AMERICA had an understanding whereby OTTOGI AMERICA granted OTG New York the exclusive right to distribute OTTOGI AMERICA's products in North America – States of New York, New Jersey, Maryland, Pennsylvania, Virginia, Massachusetts, and in Canada (East Coast), which included the concomitant right to use OTTOGI AMERICA's trademarks, logos, and designs to facilitate the sale of these products from 2008 until present.

53.    OTG New York's commitment to OTTOGI AMERICA was substantial. Throughout the Agreement's term, 100% of OTG New York's total revenues were attributable to the sale of OTTOGI AMERICA's products. OTG New York also invested *millions* to: (a) stock sufficient OTTOGI AMERICA parts and inventory for resale; (b) hire qualified personnel to coordinate OTTOGI AMERICA's North American distribution operations; and (c) promote OTTOGI AMERICA's brand through various advertisements, and (d) prepare a warehouse to store

10

inventory for the customers.

54.     OTG New York and OTTOGI AMERICA thus shared a community of interest in OTG New York's sale and distribution of OTTOGI AMERICA's products, including an ongoing shared financial interest in which OTG New York and OTTOGI AMERICA coordinated their activities relating to OTG New York's OTTOGI AMERICA's products. OTTOGI AMERICA and OTG New York shared common goals with respect to their business arrangement.

55.     Therefore, OTTOGI America's conduct, including false allegations and wrongful termination of the Agreement, constitutes unfair and deceptive business practices.

56.     OTTOGI AMERICA's misconduct also violates the New Jersey Franchise Practices Act (N.J. Stat. § 56:10-3(a)), which prohibits franchisors from terminating a franchise agreement without good cause and without providing the franchisee a reasonable opportunity to cure any alleged deficiencies.

57.     OTTOGI AMERICA's wrongful termination of the Agreement, which deprived OTG New York of its rights and benefits under the Agreement, including exclusivity and the substantial investments made by OTG New York in reliance on the Agreement, constitutes a violation of the NJFPA.

58.     OTTOGI AMERICA's misconduct was calculated to undermine OTG New York's not only exclusivity arrangement but also a distribution Agreement—the only reason OTG New York invested *millions* to establish and grow OTTOGI AMERICA's brand in the East coast of North American market.

59.     As a result of OTTOGI America's violations of the NJFPA, OTG New York has suffered and will continue to suffer damages in the amount of $20,000,000.00 or an amount to be determined in trial.

## COUNT II: BREACH OF CONTRACT

60.     OTG New York repeats and realleges the preceding paragraphs as if fully set forth herein.

61.     The Agreement by the parties were followed by actions and performances between OTTOGI America and OTG New York which constituted a valid and binding distribution contract.

62.     The Agreement is a valid and enforceable contract between the Plaintiff OTG New York and the defendant OTTOGI America.

63.     OTTOGI America's termination of the Agreement without legitimate cause constitutes a breach of contract.

64.     As a result of OTTOGI America's breach, OTG New York has suffered damages in the amount of $20,000,000.00 or an amount to be determined at trial.

## COUNT III: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

65.     OTG New York repeats and realleges the preceding paragraphs as if fully set forth herein.

66.     OTTOGI America intentionally interfered with OTG New York's business relationships with its customers by wrongfully terminating the Agreement and failing to fulfill its contractual obligations, and unlawfully taking over OTG New York's businesses and customers without fair and just compensation .

67.     Defendants' conduct is tortious; they have no justifiable privilege that would otherwise permit their intentional, illegal meddling in OTG New York's contractual relationships with its dealer-customers.

68.     As a result of OTTOGI America's interference, OTG New York has suffered and

will continue to suffer damages in the amount of $20,000,000.00 or an amount to be determined at trial.

### COUNT IV: PROMISSORY ESTOPPEL

69.    OTG New York repeats and realleges the preceding paragraphs as if fully set forth herein.

70.    OTTOGI America made clear and unambiguous promises to OTG New York regarding the long-term nature of their distribution agreement and the conditions under which it would operate.

71.    OTG New York reasonably and foreseeably relied on these promises by making significant investments in warehousing, marketing, inventory, and infrastructure to support the distribution of OTTOGI America's products.

72.    OTG New York's reliance on OTTOGI America's promises resulted in substantial detriment when OTTOGI America wrongfully terminated the Agreement without proper notice or cause.

73.    Injustice can only be avoided by enforcing OTTOGI America's promises and awarding OTG New York damages incurred as a result of its reliance on those promises in the amount of $20,000,000.00.

### COUNT V: UNJUST ENRICHMENT

74.    OTG New York repeats and realleges the preceding paragraphs as if fully set forth herein.

75.    OTG New York conferred a benefit upon OTTOGI America by investing significant resources in marketing, inventory, advertising, and infrastructure to establish and

13

grow OTTOGI America's brand in the eastern United States.

76.     OTTOGI America accepted and retained these benefits without providing fair compensation to OTG New York, especially after the wrongful termination of the Agreement.

77.     It would be unjust and inequitable for OTTOGI America to retain the benefits conferred by OTG New York without compensating OTG New York for the value of the benefits received.

78.     As a direct and proximate result of OTTOGI America's unjust enrichment, OTG New York has suffered and will continue to suffer damages in the amount of $20,000,000.00 or to be determined at trial.

### COUNT VI: DECLARATORY JUDGMENT

79.     OTG New York repeats and realleges the preceding paragraphs as if fully set forth herein.

80.     A justiciable controversy exists between the parties regarding the validity of OTTOGI America's termination of the Agreement which is ripe for adjudication.

81.     OTG New York seeks a declaratory judgment that OTTOGI America's termination of the Agreement was unlawful and that OTG New York remains the exclusive distributor of OTTOGI America's products on the East Coast.

82.     Defendants shall promptly deliver products ordered by the plaintiff and defendant shall be compensated for the business damages in the amount of $20,000,000.00.

## RELIEF SOUGHT

**WHEREFORE,** OTG New York respectfully requests that this Court:

(**A**)    Grant injunctive relief to prevent OTTOGI America from terminating the Agreement and interfering with OTG New York's business relationships;

(**B**)    Order OTTOGI AMERICA to release all open purchase orders for shipment to OTG New York and provide sufficient monetary relief so OTG New York can properly serve its customers;

(**C**)    Declare that OTTOGI AMERICA's attempted termination of the Agreement violated the Statutes and the termination was made in bad faith;

(**D**)    Order OTTOGI AMERICA not to distribute products to plaintiff's customers;

(**E**)    Award damages in an amount to be determined at the trial, including lost commissions, lost profits and other compensatory damages in the amount of $20,000,000.00;

(**F**)    Award OTG New York its reasonable attorneys' fees and costs to bring this action;

(**G**)    Assess the appropriate number of punitive damages against the culpable parties; and

(**H**)    Award any other relief at law or in equity that the Court deems just and proper under the circumstances.

*OTG NEW YORK DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE*

Dated this 24th day of June, 2024.

/s/ Sukjin Henry Cho
Sukjin Henry Cho
Email: *sjhenrycho@gmail.com*
2160 N. Central Road, Suite 305
Fort Lee, New Jersey 07024

*Attorney for Plaintiff, OTG New York, Inc.*